Joseph A. SAN FILIPPO, as President of Local # 72, United Brotherhood of Carpenters and Joiners of America, et al., Plaintiffs-Appellants-Appellees,

v.

UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, Defendant-Appellee-Appellant.

No. 1345, Docket 75–7394.

United States Court of Appeals, Second Circuit.

Argued Aug. 12, 1975.

Decided Oct. 28, 1975.

Larry A. Stumpf, Rochester, N. Y. (Goldstein, Goldman, Kessler & Underberg, Rochester, N. Y., of counsel), for plaintiffs-appellants-appellees.

Thomas P. McMahon, Buffalo, N. Y., for defendant-appellee-appellant.

Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MESKILL Circuit Judge:

The plaintiffs, Local No. 72 of the United Brotherhood of Carpenters and Joiners of America and two of its officers (collectively referred to as "Local 72") appeal from the refusal of the United States District Court for the Western District of New York (Burke, *J.*) to grant a preliminary injunction restraining the defendant United Brotherhood of Carpenters and Joiners of America ("United Brotherhood") from effectuating the terms of a directive which, *inter alia,* merges a number of Rochester area locals of the United Brotherhood, including Local 72. The United Brotherhood cross-appeals from the refusal of the district court to dismiss the complaint for failure to state a cause of action. We affirm.

On April 30, 1975, Local 72 commenced an action for preliminary and permanent injunctions to prevent the United Brotherhood from executing a directive, which the local claims was issued by the General President of the United Brotherhood subsequent to a meeting on March 25, 1975. In its amended complaint, Local 72 asserted that the meeting was held without any hearings and that on April 10, 1975, the United Brotherhood, by directive, ordered the following steps to be taken, effective May 1, 1975:

"(1) The District Council[1] is ordered dissolved;

(2) carpenters' Local Unions # 72, # 240, # 502, # 662 and # 1508 are consolidated into one new carpenters' local union;

(3) industrial local unions # 2407, # 231, # 687, and # 2255 are consolidated into one new industrial local union;

(4) A 'pro tem' Executive Committee is established, effective immediately;

(5) a General Representative of the United Brotherhood is assigned to 'guide the newly formulated local unions and officers for a reasonable period to insure that the policies and objectives of the United Brotherhood and newly formed local unions are implemented';

(6) The business representative and the business manager of the District Council are assigned as business representatives of the new carpenters' local union under the direction of the General Representative of the United Brotherhood . . . .''

Local 72 has about 1,008 members. It claims to have assets of approximately $100,000 in its general fund and $35,000 in its contingency fund.[2] It complains that the changes ordered by the United Brotherhood will dilute the voting power of the members of Local 72 at the general convention, as well as within the new consolidated local. It further alleges that the merger of the locals will impair the vested rights of the members of Local 72 in that those members will be contributing a disproportionate share of the assets of the new consolidated local.[3] Local 72 characterizes the assignment of the "general representative" to aid the consolidated local as an imposition of a trusteeship.

The amended complaint alleges that the United Brotherhood's actions violate the union's constitution, the Constitution of the United States, and The Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 401, et seq.).

The United Brotherhood, in its motion to dissolve the temporary restraining order[4] and to dismiss the action, claimed that the court lacks personal and subject matter jurisdiction, that Local 72 failed to state a cause of action, and that it failed to exhaust its remedies within the union. Furthermore, the United Brotherhood claimed that the court should not grant a preliminary injunction because no irreparable harm would be caused to the plaintiff by any of the defendant's actions and because "it cannot be said with clear and specific certainty that the plaintiff will prevail in this action." On June 18, 1975, after oral argument but without a hearing, the district court refused to grant the plaintiff's motion for a preliminary injunction and denied the defendant's motion to dismiss the complaint.

---

1. The District Council is an affiliation of the nine (9) local unions of the United Brotherhood located in the Rochester, New York vicinity: carpenters' Local Union # 72 (Rochester, approximately 1,008 members), carpenters' Local Union # 240 (Fairport, approximately 70 members), carpenters' Local Union # 502 (Canandaigua, approximately 170 members), carpenters' Local Union # 662 (Perry and Mt. Morris, approximately 240 members), carpenters' Local Union # 1508 (Lyons, approximately 85 members), industrial Local Union # 2407 (soft floor workers, approximately 80 members), industrial Local Union # 231 (mill and cabinet workers, approximately 190 members), industrial Local Union # 687 (miscellaneous industrial workers, approximately 40 members) and industrial Local Union # 2255 (Stirling Homex, approximately 40 members).

2. The contingency fund is applied to social and other benefits, as well as partial payment of dues of retired members of Local 72.

3. The combined membership of the other four locals is estimated to be 565. The assets do not exceed $20,000.

4. The United Brotherhood has been temporarily restrained from executing its directive pending the outcome of the case. That order is, of course, hereby dissolved.

## I.

▊ Local 72 argues that the failure of the district court to set forth findings of fact requires reversal. We disagree. It is regrettable that the district court failed to make the findings required by F.R.Civ.P. Rule 52(a).[5] The court's sole finding was "that questions presented by the complaint are not free from doubt. Nor is there any showing that the plaintiffs will suffer irreparable injury if this court declined to grant a preliminary injunction."

Generally, the scope of review of the grant or denial of a preliminary injunction is limited to "whether the court abused its discretion." *United States v. Corrick*, 298 U.S. 435, 437–38, 56 S.Ct. 829, 830, 80 L.Ed. 1263 (1936); *Packard Instrument Co. v. ANS, Inc.*, 416 F.2d 943, 945 (2d Cir. 1969); *Checker Motors Corporation v. Chrysler Corporation*, 405 F.2d 319, 323 (2d Cir., 1969), *cert. denied*, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777. Where, as here, no hearing was held and the court's decision was based on pleadings and affidavits, the credibility of testimony is not at stake. In such a case this Court is not limited to reviewing the district court's exercise of discretion. Since the court rendered its decision on the pleadings and affidavits before it without a hearing, this Court is in as good a position as the district court to read and interpret those documents. Consequently, this Court is able to exercise its discretion and to review the papers *de novo*. *Dopp v. Franklin National Bank*, 461 F.2d 873, 879 (2d Cir., 1972); *See Orvis v. Higgins*, 180 F.2d 537, 539 (2d Cir., 1950), *cert. denied*, 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595.

▊ This Court spelled out the requirements for a preliminary injunction in *Checker Motors Corporation v. Chrysler Corporation, supra*, 405 F.2d at 323:

"The purpose of a preliminary injunction is to maintain the status quo pending a final determination of the merits, *Unicon Management Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2 Cir. 1966); *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2 Cir. 1953); 7 Moore's Federal Practice, ¶ 65.04, at 1625 (2d ed. 1966). It is an extraordinary remedy, and will not be granted except upon a clear showing of probable success *and* possible irreparable injury. *Clairol, Inc. v. Gillette Co.*, 389 F.2d 264, 265 (2 Cir. 1968); *Societe Comptoir De L'Indus. etc. v. Alexander's Department Stores, Inc.*, 299 F.2d 33, 35, 1 A.L.R.3d 752 (2 Cir. 1962). However, 'the burden [of showing probable success] is less where the balance of hardships tips decidedly toward the party requesting the temporary relief.' *Dino De Laurentiis Cinematografica, S. p. A. v. D–150, Inc.*, supra, [366 F.2d 373 (2 Cir. 1966)] at 375. In such a case, the moving party may obtain a preliminary injunction if he has raised questions going to the merits so serious, substantial, and difficult as to make them a fair ground for litigation and thus for more deliberate investigation. *Unicon Management Corp. v. Koppers Co.*, 366 F.2d 199, 205 (2 Cir. 1966); *Dino De Laurentiis Cinematografica, S. p. A. v. D–150, Inc.*, supra; *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2 Cir. 1953)."

This standard has been elaborated and applied by this Circuit in our recent opinion in *Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.*, 476 F.2d 687, 692–99 (2d Cir., 1973).

---

5. F.R.Civ.P. Rule 52(a) states, in pertinent part:

"(a). *Effect.* In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action. Requests for findings are not necessary for purposes of review. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. . . . ."

Thus the standard suggested by the defendant and applied by the district court, namely "certainty" or "that the questions presented by the plaintiffs . . [be] free from doubt" applies an impermissibly harsh burden on the plaintiff.

• ■ Even though the wrong standards were applied, we need not reverse. Had the district court applied the proper standards, a preliminary injunction still would not be necessary in the instant case to prevent the infliction of severe or irreparable harm upon Local 72. Here, the United Brotherhood's General President ordered a consolidation of Local 72 with its 1,008 members with four other locals with a total of 565 members. Local 72 alleges by affidavit that its assets of approximately $135,000 would be diluted and dissipated by the merger since the other parties would contribute less than $20,000. It further claims that its right to appeal to the United Brotherhood would be rendered moot, because the consolidation order would dissolve them prior to the time when the appeal could be decided by the United Brotherhood's executive committee. Local 72 fears that since its existence is terminated by the United Brotherhood's action, its administrative appeal under the union constitution would be barred and its appeal in the courts might not be considered. It also fears the dilution of its voting rights at the United Brotherhood's General Convention.

The defendant replies that " . . . the International Brotherhood of Carpenters does not intend to seize the money of Local # 72 or of any other local." Furthermore, contrary to plaintiff's assertions, the defendant, by the affidavit of an officer, states "that Local Union # 72 would have six out of ten (60%) members on the Executive Committee" which would run the consolidated local. At the hearing on appeal, counsel for the United Brotherhood stated that it will hear Local 72's appeal, even after the

execution of the directive merging the locals.[6] Furthermore, since Local 72 commenced its suit before the United Brotherhood's action became effective, no court would accept the argument that Local 72's cause should be dismissed because the United Brotherhood has succeeded in destroying the Local. With respect to Local 72's claims of co-mingling and dissipation of its assets, the legal remedy is adequate. Should Local 72 ultimately prevail, it would be able to recover its assets from the United Brotherhood, the new consolidated local or the four other locals. That money could be paid from assets on hand, or, should those assets have been dissipated, through assessments.

This Court has recognized that "irreparable injury" exists if there is a probable danger that the right may be defeated unless an injunction is issued. *E. g., American Mercury v. Kiely,* 19 F.2d 295 (2d Cir., 1927). In light of the affidavits of officers of the United Brotherhood and statements of its counsel related above, there is no danger that without the benefit of a preliminary injunction, final relief would be of no avail, or would be unavailable to Local 72. *Id.* Under these circumstances, there is no serious or irreparable harm alleged or shown by Local 72 which would entitle it to a preliminary injunction, and the district court did not err by refusing to grant such relief.

## II.

■ We must now consider the United Brotherhood's assertion that the district court erred by failing to dismiss Local 72's case-in-chief. It is clear that an order denying a motion to dismiss a case is by itself non-final and non-appealable. *American Concrete Agr. Pipe Ass'n v. No-Joint Concrete Pipe Co.,* 331 F.2d 706, 709 (9th Cir., 1964); *see Boeing Co. v. International Union , U.A., A.&A. Imp. Wkrs.,* 370 F.2d 969 (3d Cir., 1967); *Cf.*

6. On July 29, 1975, the General President of the United Brotherhood wrote to the Secretary of the Rochester and Vicinity District Council

announcing the appointment of a Committee to conduct hearings in Local 72's appeal commencing September 9, 1975.

*Pepsico, Inc. v. F.T.C.,* 472 F.2d 179, 185 (2d Cir., 1972), *cert. denied,* 414 U.S. 876, 94 S.Ct. 44, 38 L.Ed.2d 122 (1973). Where, however, there is an appeal otherwise properly before this Court, and the absence of subject matter jurisdiction is suggested, that issue may be reviewed. *See Smith v. Vulcan Iron Works,* 165 U.S. 518, 524–26, 17 S.Ct. 407, 41 L.Ed. 810 (1897); *Genosick v. Richmond Unified School District,* 479 F.2d 482 (9th Cir., 1973); *Zwack v. Kraus Bros. & Co.,* 237 F.2d 255, 261 (2d Cir., 1956); *Sullivan v. Title Guarantee & Trust Co.,* 167 F.2d 393, 396 (2d Cir., 1948); *but cf. John Hancock Mut. Life Ins. Co. v. Kraft,* 200 F.2d 952 (2d Cir., 1953).

■ Local 72's second cause of action alleges that the result of the directive issued by the United Brotherhood is to impose a trusteeship upon it. It claims that the designation by the United Brotherhood of a representative to advise the consolidated local constitutes a trusteeship which is contrary to the "Constitution and Laws of the United Brotherhood and Section 302 of the La-

bor-Management Reporting and Disclosure Act of 1959 . . . [and that] the imposition of the trusteeship results in the transfer of assets of Local Union # 72 to the United Brotherhood, contrary to Section 303 of the Labor-Management Reporting and Disclosure Act of 1959. . . ."[7] In *Brewery Bottlers & Driv. v. International Bro. of Team.,* 202 F.Supp. 464, 467 (E.D.N.Y., 1962), the district court held that mere consolidation does not constitute a trusteeship. *But contra, Local No. 2, Int. Bro. of Tel. W. v. International Bro. of Tel. W.,* 261 F.Supp. 433, 434 (D.Mass., 1966). However, the facts in this case imply a more continuing supervision after dissolution and consolidation of Local 72 by the United Brotherhood, even though it does not reach the degree of interference with the locals' affairs described in *Navarro v. Gannon,* 385 F.2d 512, 517, n. 7 (2d Cir., 1967), *cert. denied,* 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (where the international designated its officers to run the local's meetings).

Contrary to Local 72's allegations, the United Brotherhood claims that its rep-

---

**7.** The relevant sections of the Act §§ 302–304, as set forth in Title 29 of the United States Code, state, in pertinent part:

"§ 462. Purposes for establishment of trusteeship

Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

"§ 463. Unlawful acts relating to labor organization under trusteeship

(a) During any period when a subordinate body of a labor organization is in trusteeship, it shall be unlawful . . . (2) to transfer to such organization any current receipts or other funds of the subordinate body except the normal per capita tax and assessments payable by subordinate bodies not in trusteeship: *Provided,* That nothing herein contained shall prevent the distribution of the assets of a labor organization in

accordance with its constitution and bylaws upon the bona fide dissolution thereof.

"§ 464. Civil action for enforcement

Complaint; investigation; commencement of action by Secretary, member or subordinate body of labor organization; jurisdiction

(a) Upon the written complaint of any member or subordinate body of a labor organization alleging that such organization has violated the provisions of this subchapter (except section 461 of this title) the Secretary shall investigate the complaint and if the Secretary finds probable cause to believe that such violation has occurred and has not been remedied he shall, without disclosing the identity of the complainant, bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate. Any member or subordinate body of a labor organization affected by any violation of this subchapter (except section 461 of this title) may bring a civil action in any district court of the United States having jurisdiction of the labor organization for such relief (including injunctions) as may be appropriate."

resentative is supplied to provide guidance only. The scope of that "guidance" and the range of power accorded to the representative, however, remains unclear. Whether or not in this case the "guidance" is tantamount to trusteeship cannot be determined from the pleadings and affidavits and that determination can be made only upon the taking of further evidence. Thus, whether the United Brotherhood's action constitutes the imposition of a trusteeship is not factually ascertainable from the record. Similarly, the charge that Section 303 of the Labor-Management Reporting and Disclosure Act of 1959 will be violated by the disposition of Local 72's assets needs further factual development. It is possible that the United Brotherhood's plans for those assets would contravene the provisions of that Act. Thus Local 72 has stated a cause of action under the Labor-Management Reporting and Disclosure Act of 1959, and the court did not err by refusing to dismiss that cause of action.

A trial on the merits may proceed upon the plaintiff's second cause of action. We need not consider the validity of the other causes of action alleged in Local 72's complaint. Such a procedure would encourage piecemeal appeals, which is against the underlying policy rationale for the non-appealability of orders denying motions to dismiss causes of action. *Cf. Parkinson v. April Industries, Inc.,* 520 F.2d 650 (2d Cir., 1975). Furthermore, facts may be developed at the trial which will dispose of many, if not all of the other causes of action. In that case, should the United Brotherhood prevail, Local 72 would have had its day in court and the appellate task, if one remains, would be clarified. Thus the policy considerations underlying the final judgment rule are honored and no one's interests are prejudiced.

The orders of the district court denying the preliminary injunction and refusing to dismiss the complaint are affirmed.