Iola FORTS, Paula Herbert, Cynthia Hall, Laura Carey, Linda Maroon, Carol Crooks, Sharon Silman, Yvonne Lee, Sheila Liles, Deborah Lewis, on behalf of themselves and all others similarly situated, Appellees,

v.

Benjamin WARD, Individually and as Commissioner of Correctional Services, Frances Clement, Individually and as Superintendent, Bedford Hills Correctional Facility, Dorothy Reid, Individually and as Deputy Superintendent for Security, Bedford Hills Correctional Facility, Melvin H. Osterman, Jr., Director of Employee Relations for the State of New York, Security Unit Employees Council 82, American Federation of State, County and Municipal Employees, AFL–CIO ("Council 82"), Carl F. Gray, Executive Director, Council 82, Clayton DeFayette, President, Council 82, Local 1265 of Council 82, A. V. Yarell, President, Local 1265, Appellants.

Nos. 257, 399, Dockets 77-2073, -2078.

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 1977.

Decided Nov. 30, 1977.

Leonard J. Pugatch, Deputy Asst. Atty. Gen., Great Neck, N. Y. (Louis J. Lefkowitz, Atty. Gen., New York City, of counsel), for appellants Ward, Clement and Reid.

William A. Babiskin, Rowley & Forest, P. C., Albany, N. Y., for Union appellants.

Stephen M. Latimer, New York City (Emilio P. Gautier, Bronx Legal Services Corp., New York City, of counsel), for appellees.

Marjorie Mazen Smith, American Civil Liberties Union Foundation, New York City (Ruth Bader Ginsburg and Kathleen Willert Peratis, American Civil Liberties Union Foundation, New York City, Monroe H. Freedman, Bartel, Engelman & Fishman, New York City, of counsel), for American Civil Liberties Union, amicus curiae.

Before KAUFMAN, Chief Judge, SMITH and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from an order of the United States District Court for the Southern District of New York, Richard Owen, *Judge,* granting a motion for a preliminary injunction. The order prohibits state and union officials from assigning male correction officers to parts of the housing and hospital units of the Bedford Hills Correctional Facility (Bedford Hills), a women's prison, pending a final determination of the action.

In February, 1977, male correction officers were assigned to the housing units at Bedford Hills for the first time. This new assignment policy was an attempt by the Department of Correctional Services to eliminate sex certification in the assignment and transfer of correction officers [1] and to implement the collective bargaining agreement between the State and the cor-

---

1. Male correction officers were assigned to Bedford Hills in response to the defendants' jointly held belief that Title VII of the 1964 Civil Rights Act requires nondiscriminatory work assignments. *Forts v. Ward,* 434 F.Supp. 946, 949 (S.D.N.Y.1977).

rection officers' union.[2]  On April 1, 1977, appellees, women inmates at Bedford Hills, commenced this action against responsible state and union officials,[3] alleging that assignment of male officers to the housing units deprived appellees of their constitutionally guaranteed right to privacy by causing them to be "involuntarily exposed" to the officers.  In particular, appellees claim that the male officers are able to view them while they shower and perform other hygienic functions.

Shortly after filing their complaint, appellees moved for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure.  The motion was supported by the affidavits of four inmates specifying instances when their privacy rights allegedly had been violated by male guards.  The state and union appellants submitted affidavits[4] and briefs in opposition to the motion in which they asserted among other things the need to conduct an evidentiary hearing to resolve disputed issues of fact. Joint Appendix for Appellants (JA) at 49a, 63a.  On the basis of the affidavits and briefs alone, the court below determined that an evidentiary hearing was unnecessary and that the standards for granting a preliminary injunction were met.  *Forts v. Ward,* 434 F.Supp. 946, 947–48 (S.D.N.Y. 1977).  Accordingly, the district judge granted the appellees' motion prohibiting state and correctional union officials from assigning male guards to those portions of the housing and hospital units which contain living quarters, toilets or shower facilities.[5]  *Forts v. Ward,* No. 77–Civ. 1560 (S.D. N.Y. June 22, 1977) (order with notice of settlement).

On this appeal, the State and the union attack the preliminary injunction[6] on a number of grounds including the failure of the district court to conduct an evidentiary hearing.[7]  Because the briefs and affidavits present disputed issues of fact, we are compelled to reverse and remand the case to the district court for a prompt evidentiary hearing.

■ It is well established that motions for preliminary injunctions should not be resolved on the basis of affidavits which evince disputed issues of fact.  Normally, an evidentiary hearing is required to decide credibility issues.  *SEC v. Spectrum, Ltd.,* 489 F.2d 535, 540–41 (2d Cir. 1973); *Dopp v. Franklin National Bank,* 461 F.2d 873, 879 (2d Cir. 1972); *Cerruti, Inc. v. McCrory Corp.,* 438 F.2d 281, 284 (2d Cir. 1971); *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1204 (2d Cir. 1970); *SEC v. Frank,* 388 F.2d 486, 490–91 (2d Cir. 1968); *SEC v. Petrofunds, Inc.,* 414 F.Supp. 1191, 1196 (S.D.N.Y.1976) (Weinfeld, J.).  Judge Kaufman has explained the rationale of this rule:

Generally, of course, a judge should not resolve a factual dispute on affidavits or depositions, for then he is merely showing a preference for "one piece of paper to

2.  Under a seniority system established in the collective bargaining agreement, the officers bid for the housing unit assignments.

3.  The plaintiffs sued under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343.

4.  The state appellants submitted the affidavit of Margery Evans Reifler, an Assistant Attorney General in the office of the Attorney General of the State of New York. The union appellants filed an affidavit of Carl F. Gray, Executive Director of the Security Unit Employees, Council 82, American Federation of State, County and Municipal Employees, AFL–CIO.

5.  The district court also denied without prejudice appellees' motion for class certification.

6.  The Union's application to this court for a stay pending appeal was denied on July 7, 1977.

7.  Appellants assert additional bases for reversal.  Both the State and the union claim that the standards for granting an injunction were not met.  The union appellants assert that nullification of their contractual rights without a hearing denies them due process.  The American Civil Liberties Union, in a brief amicus curiae, suggests that the exclusion of male guards from the living areas may violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (1970 & Supp. V 1975).  The limited nature of our holding makes it unnecessary to address these additional issues.

another." *Sims v. Greene,* 161 F.2d 87, 88 (3d Cir. 1947). This is particularly so when the judge without holding an evidentiary hearing, resolves the bitterly disputed facts in favor of the party who has the burden of establishing his right to preliminary relief. *See id.;* 7 Moore, Federal Practice § 65.04[3]. This caveat is most compelling "where everything turns on what happened and that is in sharp dispute; in such instances, the inappropriateness of proceeding on affidavits attains its maximum . . ." *Securities and Exchange Comm'n v. Frank,* 388 F.2d 486, 491 (2d [*sic*] 1968) (Friendly, C. J.).

*Dopp v. Franklin National Bank, supra,* 461 F.2d at 879 (Kaufman, J.).

8. When a district court renders its decision without an evidentiary hearing, an appellate court is not limited to reviewing the district court's exercise of discretion. In the absence of a district court assessment of the credibility of witnesses, an appellate court is as well equipped as a district court to evaluate the parties' pleadings, affidavits and depositions. *Diversified Mortgage Investors v. U. S. Life Title Ins. Co.,* 544 F.2d 571, 577 (2d Cir. 1976); *Munters Corp. v. Burgess Indus., Inc.,* 535 F.2d 210, 211 n. 4 (2d Cir. 1976); *San Filippo v. United Bhd. of Carpenters and Joiners,* 525 F.2d 508, 511 (2d Cir. 1975); *Dopp v. Franklin Nat'l Bank,* 461 F.2d 873, 879 (2d Cir. 1972). *But cf. New York v. Nuclear Regulatory Comm'n,* 550 F.2d 745, 750–53 & n. 6 (2d Cir. 1977) (questioning wisdom of expanded judicial review of lower court ruling based solely on pleadings, affidavits and depositions where the lower court did not grant the "drastic remedy" of a preliminary injunction, did not believe one side's version of the facts without detailing its reasons, or did not conduct a proceeding with "glaring infirmities" such as, but not limited to, the use of an incorrect legal standard).

9. While Judge Owen labeled these charges as "specific", 434 F.Supp. at 945, we disagree with his characterization and shall refer to these charges as the "general" allegations in order to distinguish them from the two allegations naming particular guards which we will term the "particularized" allegations.

10. The district court relied on the following allegations:

The men correction officers look over the curtains which we use to cover the doorways to our cells when we are on the toilet. They pull these curtains down for no good reason

Judge Owen determined that the motion raised no issues of fact requiring a hearing because none of the charges of privacy invasion contained in appellees' affidavits was denied in appellants' papers. 434 F.Supp. at 948. We must disagree. Our examination of the briefs and affidavits [8] reveals several areas which deserve probing beyond the information contained in the vague, conclusory affidavits before the district court.

In finding no issues of fact, Judge Owen focused on appellants' failure to make an express denial of the "specific" [9] charges made in the four affidavits.[10] These vague allegations against unnamed officers at unspecified dates [11] and times are impossible to verify, let alone deny, and

Affidavit of Bernidienne Watkins sworn to on May 3, 1977, JA at 17a.

Men guards have come into the shower room while I am drying myself and watched as I dried and dressed myself.

Affidavit of Carol Crooks sworn to on May 3, 1977, JA at 19a.

It is also embarrassing that male guards are sent around to take the 6:30 a. m. count. I am usually asleep, and I feel very awkward about being awakened and peered at by these men guards when I am completely unable to control what position they observe me sleeping in.

Affidavit of Yvonne Lee sworn to on May 3, 1977 (Lee Affidavit), JA at 21a–22a.

Finally, I feel very awkward that men are assigned as C.O.'s at the hospital. One time (March 24, 1977), I went to the hospital and was describing to the nurse what my problem [*sic*] which was of a personal, female nature. There was a man guard directly in front of the medication window, where the nurse was. I was very embarrassed to have to describe the problem in front of the man guard.

*Id.* at 22a; *see* 434 F.Supp. at 948.

The district court did not consider the charges that male guards enter the housing unit corridors unannounced because on May 9, 1977, after the affidavits were executed, appellant Ward issued a directive requiring that correction officers announce their presence in the housing areas. 434 F.Supp. at 948 n. 7.

11. While Yvonne Lee specified the date of an embarrassing hospital visit, she did not indicate the approximate time of the incident or the name of the guard involved. Lee Affidavit, JA at 22a.

the union appellants so asserted. Affidavit of Carl F. Gray sworn to on June 7, 1977, JA at 71a. It is hornbook law that a statement to the effect that one has insufficient knowledge "to form a belief as to the truth of an averment" is treated as a denial. Fed.R.Civ.P. 8(b); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1262 (1969). The district court was in error, therefore, in concluding that none of these charges was denied in appellants' affidavits and in accepting the truth of appellees' general allegations.[12]

■ Judge Owen's decision to dispense with an evidentiary hearing was further based on appellants' failure to submit affidavits challenging the truth of two allegations against named correction officers (the particularized allegations).[13] 434 F.Supp. at 948. Undoubtedly, it would have been wise to submit affidavits from the named officers denying these two assertions. This omission, however, did not warrant the conclusion that no issues of fact remained. First, the truth of one of these two allegations was suspect on its face, thereby alerting the reader of the need to test the affiant's veracity.[14] Second, appellants countered appellees' complaint that the assignment of male guards caused appellees' *involuntary* exposure and concomitant abridgement of privacy rights by asserting that appellees have the means to avoid these alleged deprivations.[15] Accordingly, they argued, any exposure and resulting humiliation was of appellees' own doing. Affidavit of Margery Evans Reifler sworn to on June 8, 1977, JA at 46a–48a; State Appellants' Memorandum of Law in Opposition to Plaintiffs' Motion, JA at 62a. Although we express no views on the merits of appellants' argument, it certainly presents issues of fact and credibility which contradict appellees' particularized and general allegations.[16] The assertion that the inmates could control who observed them, and when, rebuts the contention implicitly made in all of appellees' affidavits, and explicitly stated in their complaint, that exposure of their nude bodies was "forced" and "without their consent".[17] JA at 5a,

12. Appellants expressly denied the charge of inadequate privacy in the hospital, to the extent that they could without more information. They asserted that no male or female correction officer is allowed beyond the waiting room of the prison clinic absent an emergency, that the screening clinic and examining rooms are private, and that the patient may request that the doors to the examination rooms be closed to insure her privacy. Affidavit of Margery Evans Reifler sworn to on June 8, 1977 (Reifler Affidavit), JA at 49a. Appellees concede this denial. Brief for Appellees at 6 n.4. The district court's opinion does not mention this refutation.

13. Yvonne Lee alleged that "[o]n several occasions, C.O. Andrew Jackson, while walking down 114–D to take count, looked over the curtain drawn across my cell doorway and caught me on the toilet." Lee Affidavit, JA at 21a.

Linda Maroon charged that "[o]n our [*sic*] about January 27, 1977, I was seated on the toilet in my cell, when I looked up and saw corrections [*sic*] officer Lopez looking in on me." Affidavit of Linda Maroon sworn to on May 3, 1977, JA at 23a.

14. While Ms. Maroon alleges that Officer Lopez saw her on the toilet in January, 1977, the district court opinion indicates that male officers were not assigned to the housing and hospital units until February, 1977.

15. For example, appellants argued that the inmates may request that their cell doors be closed while they attend to personal needs. This expedient eliminates the possibility of guards looking over the doorway curtains. Reifler Affidavit, JA at 47a; affidavit of Carl F. Gray sworn to on June 7, 1977 (Gray Affidavit), JA at 71a. They further averred that the women can avoid observation by dressing and drying themselves in the curtained shower stalls before entering the anteroom. Reifler Affidavit, JA at 48a; Gray Affidavit, JA at 71a.

16. The district judge found that these self-help remedies do not sufficiently protect appellees' right to privacy. 434 F.Supp. at 949. At the same time, however, he highlighted the factual dispute surrounding this issue by posing numerous questions in rhetorical form. The judge's own questions suggest the need for the requested evidentiary hearing. *See Cerruti, Inc. v. McCrory Corp.*, 438 F.2d 281, 283–84 (2d Cir. 1971) (difficult questions of trademark law should not be resolved, "even preliminarily, on an incomplete factual showing by way of affidavits . . .").

17. If appellees are responsible for their own exposure, arguably the conduct of the guards

9a. Thus, even if the basic facts were conceded, *SEC v. Frank, supra,* 388 F.2d at 490, the inferences to be drawn from them are in dispute. Consequently an evidentiary hearing should have been provided if practicable. *Id.* And this is hardly a case where an evidentiary hearing would have been impracticable due to the magnitude of the inquiry. *SEC v. Frank, supra,* 388 F.2d at 490–91; *SEC v. Petrofunds, Inc., supra,* 414 F.Supp. at 1196 n. 7. Nor would the taking of evidence have served little purpose. *Herbert Rosenthal Jewelry Corp. v. Grossbardt,* 428 F.2d 551, 554 (2d Cir. 1970); *Redac Project 6426, Inc. v. Allstate Insurance Co.,* 402 F.2d 789, 790–91 (2d Cir. 1968); *SEC v. Frank, supra,* 388 F.2d at 490. There is no apparent reason for having denied appellees an opportunity to present and cross-examine witnesses. The facts are simple and the time consumed in an evidentiary hearing would be minimal. Resolution of the factual questions, most of which present credibility issues, with the benefit of cross-examination and the opportunity to observe the witnesses' demeanor on the stand, is essential.

Because of the important interests of the parties in both preventing privacy invasions and retaining work assignments, the district judge should conduct an evidentiary hearing on the preliminary injunction motion as soon as convenient, but no later than December 15, 1977.[18] We suggest that the district judge consider consolidating the trial on the merits with the evidentiary hearing pursuant to Rule 65(a)(2). Fed.R.Civ.P. 65(a)(2).

Reversed and remanded.

---

cannot be characterized as invading privacy rights. *Cf. Hand v. Briggs,* 360 F.Supp. 484, 485 (N.D.Cal.1973) (district court dismissed a complaint by a male prisoner who alleged that female guards were "in a position" to watch him bathe, noting the difference between allegations of actual invasion of privacy and of the possibility of such an invasion).

18. The parties appear to disagree on the precise scope of the injunctive order. We assume that before entering another order, in the event that this occurs, the court will explore with counsel the scope and form of the order that best accommodates the interests of all parties.